**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PELOTON INTERACTIVE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:21-cv-160-RGA |
| | ) | |
| ECHELON FITNESS MULTIMEDIA, | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT ECHELON FITNESS MULTIMEDIA, LLC'S OPENING BRIEF IN
SUPPORT OF MOTION TO DISMISS FOR IMPROPER CLAIM SPLITTING**

GREENBERG TRAURIG, LLP

OF COUNSEL:

Benjamin J. Schladweiler (#4601)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE  19801
Phone:  (302) 661-7000
schlwadweilerb@gtlaw.com

Douglas R. Weider
James L. Ryerson
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Phone:  (973) 360-7900
weiderd@gtlaw.com
ryersonj@gtlaw.com

*Attorney for Defendant Echelon Fitness
Multimedia, LLC*

Dated:  March 1, 2021

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES .......................................................................................... ii

I.      NATURE AND STAGE OF PROCEEDINGS .................................................. 1

II.     SUMMARY OF ARGUMENT .......................................................................... 2

III.    STATEMENT OF FACTS.................................................................................. 2

      A.     Peloton Chooses Not Assert The '521 Patent In *Peloton I* ................................... 2

      B.     Peloton Affirmatively Relies Upon Non-Assertion Of '521 Patent
           Against Echelon In *Peloton I* To Oppose Consolidation With The
           ICON Case ......................................................................................................... 3

      C.     Peloton Belatedly Asserts The '521 Patent Against Echelon ................................ 4

      D.     The '026 And '521 Patent Claims Are Patentably Indistinct................................... 4

      E.     Peloton's Prior Reliance Upon Belatedly-Asserted Patent To
           Avoid IPR ......................................................................................................... 8

IV.     ARGUMENT ..................................................................................................... 8

      A.     Legal Standards Governing Echelon's Motion To Dismiss.................................... 8

      B.     The Instant Action Should Be Dismissed For Improper Claim
           Splitting ........................................................................................................... 10

V.      CONCLUSION ................................................................................................. 12

## TABLE OF AUTHORITIES

**CASES**:                                                                                      **PAGE**

*Acosta v. Gaudin*,
    C.A. No. 17-366, 2017 WL 4685548 (W.D. Pa. Oct. 18, 2017)........................................11, 12

*Acurned LLC v. Stryker Corp.*,
    525 F.3d 1319 (Fed. Cir. 2008).............................................................................................9, 10

*Adaptix, Inc. v. Amazon.com, Inc.*,
    C.A. No. 5:14-cv-01379, 2015 WL 4999944 (N.D. Cal. Aug. 21, 2015)..........................10, 12

*Leonard v. Stemtech Int'l, Inc.*,
    C.A. No. 12-86-LPS-CJB, 2012 WL 3655512 (D. Del. Aug. 24, 2012) .................9, 10, 11, 12

*Live Face on Web, LLC v. Cremation Soc'y of Illinois, Inc.*,
    C.A. No. 18-1718, 2019 WL 398938 (E.D. Pa. Jan. 31, 2019).................................................11

*Ohio Willow Wood Co. v. Alps S., LLC*,
    735 F.3d 1333 (Fed. Cir. 2013)................................................................................................11

*Peloton Interactive, Inc. v. Flywheel Sports, Inc.*,
    C.A. No. 2:18-cv-390 (E.D. Texas) .......................................................................................3, 8

*PersonalWeb Techs. LLC v. Google LLC*,
    No. 5:13-CV-01317-EJD, 2020 WL 520618 (N.D. Cal. Jan. 31, 2020)....................................8

*Prewitt v. Walgreens Co.*,
    C.A. No. 12-6967, 2013 WL 6284166 (E.D. Pa. Dec. 2, 2013) ..............................................11

*SimpleAir, Inc. v. Google LLC*,
    884 F.3d 1160 (Fed. Cir. 2018)............................................................................................9, 10

*Single Chip Systems Corp. v. Intermec IP Corp.*,
    495 F. Supp. 2d 1052 (S.D. Cal. 2007) ..............................................................................10, 12

*Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC*,
    C.A. No. 14-339-RGA, 2014 WL 3885939 (D. Del. Aug. 6, 2014).....................................8, 9

*Walton v. Eaton Corp.*,
    563 F.2d 66 (3d Cir. 1977) .............................................................................................9, 10, 11

**Other Authorities**

Fed. R. Civ. Proc. 12(b)(6)..........................................................................................................2, 10

Fed. R. Civ. Proc. 15 .........................................................................................................................9

Fed. R. Civ. Proc. 38 .........................................................................................................................9

U.S. Patent No. 10,486,026 ....................................................................................................... *passim*

iii

U.S. Patent No. 10,639,521 ........................................................................................ *passim*

U.S. Patent Nos. 10,022,590 .............................................................................................2

## I.      NATURE AND STAGE OF PROCEEDINGS

The instant action—the second lawsuit filed by Plaintiff Peloton Interactive, Inc.

("Peloton") against Defendant Echelon Fitness Multimedia, LLC ("Echelon") involving related

patents and the same accused products—serves to circumvent the deadline to amend pleadings

in the first action between the parties (C.A. No. 19-1903-RGA, hereinafter "*Peloton I*").

Peloton has no excuse for missing the deadline to amend pleadings in *Peloton I*.

The presently-asserted patent, U.S. Patent No. 10,639,521 ("the '521 patent"), is a

continuation of the patent asserted in *Peloton I*, U.S. Patent No. 10,486,026 ("the '026 patent"),

which the patent examiner found "patentably indistinct" from the '026 patent claims.  The '521

patent issued on May 5, 2020, nearly seven months before all of: (i) the December 1, 2020

deadline to amend pleadings in *Peloton I*, (ii) Peloton's filing of its operative Second Amended

Complaint in *Peloton I*, and (iii) Peloton's assertion of the '521 patent against ICON Health &

Fitness, Inc. ("ICON") in a case filed in this Court (C.A. No. 20-662-RGA).

Worse yet, Peloton's delay in asserting the '521 patent against Echelon was clearly

strategic.  Indeed, Peloton affirmatively relied upon its decision not to assert the '521 patent

against Echelon to argue *Peloton I* and the ICON case should not be consolidated for purposes

of discovery.  Peloton also has a history of asserting patents well into a litigation and then

relying upon the advanced stage of the litigation to try to avoid *inter partes* review ("IPR") of

the patent.

After Echelon filed petitions for IPR of all three patents asserted in *Peloton I*—two of

which resulted in IPR institution on all challenged claims and one of which is pending—

Peloton repeated its "playbook" of belatedly asserting a patent to avoid IPR review. Putting a

proverbial gun to Echelon's head, Peloton offered two options: consent to adding the '521

patent in *Peloton I* and risk losing the ability to file an IPR or face the prospect of a duplicitous

litigation involving the '521 patent.   Only after Echelon refused to agree to Peloton's

amendment request in *Peloton I* did Peloton file the instant action. While Peloton may have the resources to pursue duplicative litigation to gain an advantage, the law bars such improper claim splitting.

## II.      SUMMARY OF ARGUMENT

1.      The Court should dismiss the instant action, pursuant to Federal Rule of Civil Procedure 12(b)(6), because Peloton's filing of duplicative lawsuits involving the same subject matter violates the prohibition on claim splitting. The two lawsuits involve the ***same*** parties, the ***same*** accused products, and related patents having patentably indistinct claims that Peloton alleges embody the ***same*** inventive concepts. While it is evident from a comparison of the '026 and '521 patent claims that they are not patentably distinct, that finding is further compelled by Peloton's filing of a terminal disclaimer during prosecution of the '521 patent— a "strong clue" the patent examiner and Peloton thought the claims lacked a patentable distinction.

2.      Dismissal for improper claim splitting is particularly appropriate where, as here, the later-filed action serves to circumvent the deadline for amending pleadings in the earlier-filed action. Peloton has offered no explanation, nor could it, for why it failed to assert the '521 patent in *Peloton I* prior to the deadline for amending pleadings, notwithstanding that patent issued nearly seven months before Peloton filed its operative complaint in that action. Peloton cannot avoid its lack of good cause to amend the *Peloton I* Scheduling Order by filing a second duplicative lawsuit, and, therefore, the present action should be dismissed.

## III.     STATEMENT OF FACTS

### A.      Peloton Chooses Not Assert The '521 Patent In *Peloton I*

On October 8, 2019, Peloton filed the *Peloton I* action alleging Echelon infringed U.S. Patent Nos. 10,022,590 ("the '590 patent") and 10,322,315 ("the '315 patent") via its sales of the "Smart Connect EX1, EX3, EX5, and EX5s bikes." (C.A. No. 19-1903-RGA at D.I. 1 at ¶

3).[1]  Peloton later amended its complaint to also allege infringement of the '026 patent.  (C.A. No. 19-1903-RGA at D.I. 16).  On December 1, 2020, the deadline to amend pleadings in *Peloton I*, Peloton amended its complaint a second time to assert additional non-patent claims. (C.A. No. 19-1903-RGA at D.I. 77, hereinafter "the *Peloton I* Second Amended Complaint"). Despite that the '521 patent issued on May 5, 2020, nearly seven months earlier, Peloton decided not to allege infringement of the '521 patent in the *Peloton I* Second Amended Complaint.

Echelon filed petitions for IPR of all three patents asserted in *Peloton I*.  On February 5, 2021, after the Patent Trial and Appeal Board instituted IPR on all claims of the '590 and '315 patents, the parties stipulated to the dismissal of all the claims and counterclaims involving those patents.  (C.A. No. 19-1903-RGA at D.I.. 106).  A decision on institution of Echelon's petition for IPR of the '026 patent, the only remaining asserted patent in *Peloton I*, is expected within a week of this filing.

Discovery and claim construction are well underway in *Peloton I*, with a *Markman* hearing scheduled for June 24, 2021. (C.A. No. 19-1903-RGA at D.I. 89).

### B.    Peloton Affirmatively Relies Upon Non-Assertion Of '521 Patent Against Echelon In *Peloton I* To Oppose Consolidation With The ICON Case

On May 15, 2020, Peloton sued ICON Health & Fitness, Inc. ("ICON") in the District of Delaware alleging infringement of the '026 and '521 patents (C.A. No. 20-662-RGA, hereinafter "the *ICON Case*").  Peloton did not assert the '521 patent against Echelon at that time.  Instead, Peloton affirmatively relied upon its decision not to assert the '521 patent against Echelon to argue that *Peloton I* and the *ICON Case* should not be consolidated or coordinated for discovery because "the only overlap between these two litigations is Peloton's '026 patent."

---

[1] To distinguish between docket entries in *Peloton* I and the instant case, this brief uses the form "C.A. No. 19-1903-RGA at D.I. __" to refer to docket entries in *Peloton I* and the form "D.I. __" to refer to entries in the instant case.

(C.A. No. 19-1903-RGA, D.I. 38 at 1).

### C.      Peloton Belatedly Asserts The '521 Patent Against Echelon

On January 25, 2021, nearly two months after the deadline to amend pleadings in *Peloton I*, Peloton asked if Echelon would stipulate to Peloton filing an amended complaint to add a claim for infringement of the '521 patent against Echelon.  Peloton offered no explanation for its failure to assert the '521 patent prior to the deadline to amend pleadings.  After Echelon refused to stipulate to the proposed amendment, Peloton filed the instant action alleging that Echelon infringes the '521 patent via sales of the ***same accused products*** as in *Peloton I*:  the "Smart Connect EX1, EX3, EX5, and EX5s bikes."  (D.I. 1 at ¶ 6).  The allegations in the instant Complaint track almost verbatim the patent-related allegations in the *Peloton I* Second Amended Complaint.  (*Compare* D.I. 1 *with* C.A. No. 19-1903-RGA at D.I. 77).

### D.      The '026 And '521 Patent Claims Are Patentably Indistinct

Peloton has offered no explanation for failing to assert the '521 patent in *Peloton I*; nor could it.  The '026 and '521 patents share the same specification and have incredibly similar (and in several instances identical) claims.  As shown in the table below, claim 1 of the '026 and claim 1 of the '521 patent have only four minor differences:  (1) as identified by the red text, the '026 patent uses "archived" to modify every reference to "exercise class," whereas the '521 patent avoids that redundancy by incorporating the same "archived exercise class" requirement via a single wherein clause; (2) as identified by the purple text, the '026 patent requires that the user "cause movement" of the exercise device, whereas in the '521 patent the user must "use" an exercise device that moves; (3) as identified by the green text, the '026 patent requires display of content "for an entire exercise class"; and (4) as identified by the underlined black text, the '026 patent requires synchronization of "the archived performance data with the first user performance data," whereas the '521 patent requires "performance parameters" to be synchronized with one another.

4

| Independent Claim 1 - '026 Patent | Independent Claim 1 - '521 Patent |
|---|---|
| 1. An exercise system for computer-augmented use at home by a first user participating in an archived exercise class accessible over a computer network, the exercise system comprising: | 1. An exercise system for computer-augmented use at home by a first user participating in an exercise class accessible over a computer network, the exercise system comprising: |
| an exercise device configured for a first user to cause movement of a portion of the exercise device; | an exercise device configured for use by the first user; |
| a sensor operable to generate first user performance data based on activity by the first user when the first user causes the movement of the portion of the exercise device; and | a sensor configured to generate first user performance data based on activity by the first user associated with movement of a portion of the exercise device; and |
| a computer configured to: | a computer configured to: |
| cause a display screen to present a plurality of available archived exercise classes for selection; | cause a display screen to present a plurality of available exercise classes for selection, wherein the plurality of available exercise classes comprises a plurality of available archived exercise classes for selection, each of the plurality of available archived exercise classes comprising content for an entire exercise class; |
| accept from the first user, via a user input interface, a selection of one of the available archived exercise classes, thereby resulting in a selected archived exercise class; | accept from the first user, via a user input interface, a selection of one of the available archived exercise classes, thereby resulting in a selected exercise class; |
| receive, via the computer network, data representing content of the selected archived exercise class; | receive, via the computer network, data representing content of the selected exercise class; |
| cause the display screen to display the content of the selected archived exercise class while the first user participates in the selected archived exercise class by causing movement of the portion of the exercise device; | cause the display screen to display the content of the selected exercise class while the first user participates in the selected exercise class; |
| receive, via a sensor input interface, the first user performance data from the sensor during at least a portion of the selected archived exercise class; | receive, via a sensor input interface, the first user performance data from the sensor during at least a portion of the selected exercise class; |
| generate, on a basis of the first user performance data, a first user performance parameter; | generate, on a basis of the first user performance data, a first user performance parameter; |
| receive, via the computer network, archived performance data representing archived user performance parameters for a plurality of other users over at least the portion of the | receive, via the computer network, performance data representing user performance parameters for a plurality of other users over at least the portion of the |

| | |
|---|---|
| selected <u>archived</u> exercise class, wherein the archived performance data was previously generated by the other users in one or more locations on the exercise device or at least one other exercise device while participating in the <u>archived</u> exercise class; | selected exercise class, wherein the performance data was generated by the other users in one or more locations on the exercise device or at least one other exercise device while participating in the exercise class; and |
| <u>synchronize the archived performance data with the first user performance data, wherein the archived user performance parameters represented by the archived performance data are synchronized with the first user performance parameter</u>; and | |
| cause the display screen to display a dynamically updating ranked list of the first user performance parameter and at least some of the <u>synchronized archived user</u> performance parameters, to thereby simulate the first user competing with at least some of the other users. | cause the display screen to display, <u>during the selected exercise class</u>, a dynamically updating ranked list of the first user performance parameter and at least some of the performance parameters <u>for the plurality of other users, such that the performance parameters displayed on the dynamically updated ranked list are synchronized to one another</u> to thereby simulate the first user competing with at least some of the other users <u>during the selected exercise class</u>. |

Peloton does not and cannot characterize the differences in language between claim 1 of the '026 patent and claim 1 of the '521 patent as patentable distinctions.  Instead, Peloton admits the claims embody the ***same alleged inventive concept***:

| Alleged Inventive Concept '026 Patent<br>*Peloton I* Second Amended Complaint, ¶ 68 | Alleged Inventive Concept '521 Patent<br>D.I. 1 at ¶ 45 |
|---|---|
| "Claim 1 of the '026 Patent . . . describes an unconventional improvement over the prior art, because prior art in-studio classes did not offer any capability for a user to access and participate in archived exercise classes. And it was not well-understood, routine, or conventional to provide a home bike with networked access to an archived exercise class. By providing remote users with networked access to archived cycling classes, the '026 Patent allowed remote riders to have the experience of an in-studio cycling class, in the comfort of their own home and on whatever schedule they chose. This offering was a major advancement over both live in-studio classes and at-home bikes in existence at that time." | "Claim 1 of the '521 Patent describes . . . an unconventional improvement over the prior art, because prior art in-studio classes did not offer any capability for a user to access and participate in archived exercise classes. And it was not well-understood, routine, or conventional to provide a home bike with networked access to archived exercise classes. By providing remote users with networked access to archived exercise classes, the '521 Patent allowed remote users to have the experience of an in-studio exercise class, in the comfort of their own home and on whatever schedule they chose. This offering was a major advancement over both live in-studio classes and at-home exercise machines in existence at that time." |

6

Independent claim 11 of the '026 and '590 patents likewise offers no patentable distinction between the patents.  Indeed, Peloton describes the alleged inventive concepts in claim 11 of both patents as "similar to the unconventional technological advancements recited in independent Claim 1."  (D.I. 1 at ¶ 47; *Peloton I* Second Amended Complaint at ¶ 70).

Nor do any of the dependent claims of '026 and '521 patents offer any patentable distinction.  In fact, dependent claims 2, 6, 10, 14, 17 and 20 of the '026 and '521 patents are ***identical*** in each patent.  Further, the only difference between dependent claims 4, 5, 12, 13, 18, and 19 of the two patents is that in the '026 patent those claims include references to "archived" before each reference to "exercise class," whereas the claims of the '521 patent avoid that redundancy by injecting the requirement that the classes be "archived" via a wherein clause in the independent claims.  A comparison of the remaining dependent claims of the '026 and '521 patents shows only trivial differences, none of which Peloton alleges amount to an inventive concept.  (*Compare Peloton I* Second Amended Complaint at ¶¶ 71-73 *with* D.I. 1 at ¶¶ 49-52 (alleging identical inventive concepts)).

The lack of patentable distinction between the '026 and '521 patent claims was not lost on the examiner at the Patent Office.  During prosecution of the '521 patent, the examiner rejected claims 1-20 of the '521 patent because they were "not patentably distinct" from claims 1-20 of the '026 patent.  (Ex. 1, Non-Final Rejection at p. 3, Application No. 16/666,332).[2] Peloton did not dispute that finding.  Instead, Peloton filed a terminal disclaimer to obviate the double-patenting rejection.  (Ex. 2, Response to Non-Final Office Action at p. 8, Application No. 16/666,332).

---

[2] "A court may . . . take judicial notice of . . . prosecution histories, which are 'public records.'" *Sound View Innovations, LLC v. Facebook*, Inc., 204 F. Supp. 3d 655, 658–59 (D. Del. 2016).

E.     **Peloton's Prior Reliance Upon Belatedly-Asserted Patent To Avoid IPR**

This is not the first time that Peloton has sought to assert a patent well into a litigation

for strategic reasons.  In *Peloton Interactive, Inc. v. Flywheel Sports, Inc.*, C.A. No. 2:18-cv-

390 (E.D. Texas), Peloton successfully sought leave to amend its complaint to assert

infringement of the '315 patent nearly a year into the proceedings.  Then, after the defendant

in that case promptly petitioned for IPR of the '315 patent, Peloton opposed IPR institution due

to the "advanced stage" of the district court litigation and the fact that the trial there would

occur before a final written decision in the IPR.  (Ex. 3, Peloton Preliminary Patent Owner

Response, IPR2019-01411 at pp. 13-20).[3]

The similar timing of Peloton's belated assertion of the '521 patent here cannot be

ignored.  Had Echelon stipulated to the assertion of the '521 patent in *Peloton I*, Peloton

could—and, if history is a guide, likely would—cite the advanced stage of *Peloton I* and its

October 17, 2022 trial date as a basis to deny any petition for IPR of the '521 patent that

Echelon may file.

IV.     **ARGUMENT**

A.     **Legal Standards Governing Echelon's Motion To Dismiss**

"The doctrine of claim splitting bars plaintiffs from maintaining two separate causes of

action 'involving the same subject matter at the same time in the same court against the same

defendant.'"  *Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC*, C.A. No. 14-

339-RGA, 2014 WL 3885939, at *1 (D. Del. Aug. 6, 2014) (quoting *Walton v. Eaton Corp.*,

563 F.2d 66, 70 (3d Cir. 1977)).  "Claim splitting is a form of *res judicata*." *Vehicle Interface*,

2014 WL 3885939, at *1.  "Accordingly, the bar against claim splitting requires the two claims

---

[3] Echelon requests that the Court take judicial notice of Peloton's Preliminary Patent Owner's
Response in IPR2019-01411.  *See PersonalWeb Techs. LLC v. Google LLC*, No. 5:13-CV-
01317-EJD, 2020 WL 520618, at *6 (N.D. Cal. Jan. 31, 2020) ("The IPR materials cited by
Defendants and Plaintiff are subject to judicial notice.").

to arise out of the same transactional facts." *Id*.

"In the context of patent infringement suits, this requires the accused products in the two suits to be 'essentially the same.'" *Id*. (quoting *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008)).  In cases involving different asserted patents, the "assertion of each new continuation patent does not necessarily create a new cause of action."  *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1169 (Fed. Cir. 2018).  Where different patents are asserted in a first and second suit, preclusion may still occur "if the scope of the asserted patent claims in the two suits is essentially the same"—i.e., the claims are "patentably indistinct."  *Id*. at 1167.  While not dispositive, "a terminal disclaimer is a strong clue that a patent examiner and, by concession, the applicant, thought the claims in the continuation lacked a patentable distinction over the parent."  *Id*. at 1168.

As the Third Circuit has instructed, courts "must insure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints, Fed. R. Civ. Proc. 15, and demand for trial by jury, Fed. R. Civ. Proc. 38."  *Walton*, 563 F.2d at 71.  Accordingly, "very often the doctrine of claim-splitting applies to bar a plaintiff from filing a new lawsuit after the court in an earlier action denied leave to amend the complaint to add those same claims."  *Leonard v. Stemtech Int'l, Inc.*, C.A. No. 12-86-LPS-CJB, 2012 WL 3655512, at *8 (D. Del. Aug. 24, 2012), *report and recommendation adopted*, C.A. No. 12-86-LPS-CJB, 2012 WL 4591453 (D. Del. Sept. 28, 2012).  "[I]n such circumstances, the second-filed suit is often not permitted to go forward—not only to prevent plaintiffs from circumventing prior court orders, but also because such circumstances tend to suggest that the claims raised in the second suit could well have been pursued in the prior litigation."  *Id*.

"A motion to dismiss pursuant to Rule 12(b)(6) is . . . an appropriate means by which a party may seek to dismiss a later-filed action on the grounds that it is duplicative of an earlier-

filed action." *Leonard*, 2012 WL 3655512, at *4; *see also Adaptix, Inc. v. Amazon.com, Inc.*, C.A. No. 5:14-cv-01379, 2015 WL 4999944, *10 (N.D. Cal. Aug. 21, 2015) (dismissing patent claims for improper claim splitting); *Single Chip Systems Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1065 (S.D. Cal. 2007) (same).  In analyzing a motion to dismiss for improper claim splitting, general principles of claim preclusion are analyzed under regional circuit law, whereas the inquiry into whether two claims for patent infringement are essentially the same for purposes of preclusion is analyzed under Federal Circuit law.  *Acurned*, 525 F.3d at 1323.

### B.       The Instant Action Should Be Dismissed For Improper Claim Splitting

Peloton's assertion of vexatious and duplicitous lawsuits "involving the same subject matter at the same time in the same court against the same defendant" is a clear case of improper claim splitting.  *Walton*, 563 F.2d at 70.  This case and *Peloton I* involve the ***same*** parties, Peloton and Echelon, and the ***same*** accused products:  the "Smart Connect EX1, EX3, EX5, and EX5s bikes."  (D.I. 1 at ¶ 6; C.A. No. 19-1903-RGA at D.I. 1 at ¶ 3).  That the instant case involves a different continuation patent than *Peloton I* does not create a new cause of action because "the scope of the asserted patent claims in the two suits is essentially the same." *SimpleAir*, 884 F.3d at 1167

As discussed in factual overview of the patents above (Section III.D.), the '026 and '521 patents share the same specification and have patentably indistinct claims.  In fact, many of the claims of the two patents are ***identical***, and Peloton admits the claims of the '026 and '521 patents embody the ***same*** alleged inventive concepts.  (*See* Section III.D. above; *compare* D.I. 6 at ¶¶ 45-52 *with Peloton I* Second Amended Complaint at ¶¶ 68-73).  Moreover, the patent examiner's double-patenting rejection and Peloton's filing of a terminal disclaimer during prosecution of the '521 patent provides "a strong clue that a patent examiner and, by concession, [Peloton], thought the claims in the ['521 patent] lacked a patentable distinction over the parent ['026 patent]."  *SimpleAir*, 884 F.3d at 1168.  The '026 and '521 patents "use

10

[of] slightly different language to describe substantially the same invention" does not dictate otherwise.  *See Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) ("If the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies").

Peloton's reason for claim-splitting is apparent:  it ignored the deadline to amend pleadings in *Peloton I* to advance its own strategic agenda.  But, as the Third Circuit has made clear, "the incorrect procedure of filing duplicative complaints" cannot be used "for the purpose of circumventing the rules pertaining to the amendment of complaints."  *Walton*, 563 F.2d at 71.  Equity cannot reward such tactics, and therefore, the doctrine of claim-splitting "[v]ery often" applies "to bar a plaintiff from filing a new lawsuit after the court in an earlier action denied leave to amend the complaint to add those same claims."  *Leonard*, 2012 WL 3655512, at *8; *see also Prewitt v. Walgreens Co.*, C.A. No. 12-6967, 2013 WL 6284166, at *5 (E.D. Pa. Dec. 2, 2013) (same); *Live Face on Web, LLC v. Cremation Soc'y of Illinois, Inc.*, C.A. No. 18-1718, 2019 WL 398938, at *6 (E.D. Pa. Jan. 31, 2019) (same).

That Peloton, recognizing that a motion for leave in *Peloton I* would have been unsuccessful, chose not to even try to seek leave does not make the bar on claim splitting any less applicable.   The Western District of Pennsylvania's analysis in *Acosta v. Gaudin*, C.A. No. 17-366, 2017 WL 4685548 (W.D. Pa. Oct. 18, 2017) is particularly instructive.  There, the court found as follows.

> The Secretary made the choice not to file a motion to amend the complaint in *Holland Acquisitions* to add Defendant to the first case (although he has filed a boatload of amendment motions to do other things). Maybe the Secretary made that choice because the deadline to amend pleadings had long ago gone by. Maybe the Secretary, realizing that he had already repeatedly sought leave to amend his pleadings in the face of objections of the opposing parties, figured more objections awaited him. Perhaps hypothesizing that the Court might be less than amenable to yet another amendment request that sought to add another defendant well after significant amounts of discovery occurred, the Secretary filed an entirely new action in order to dodge those issues. But, the Secretary may not avoid a possible negative ruling by filing a wholly separate case. *Schneider*, 301 Fed.Appx. at 190. The law requires the Secretary to roll those

11

dice at the table where he is already seated. To the extent that the Secretary may disagree with the Court's ruling on a motion—any motion—his remedy is an appeal, not more lawsuits.

*Id*. at *4.

The same result follows here. If Peloton wanted to assert the '521 patent against Echelon after the deadline to amend pleadings, it should have moved for leave to amend its complaint and the scheduling order. That Peloton correctly concluded that it lacked good cause to modify the *Peloton I* Scheduling Order did not allow Peloton to avoid that "possible negative ruling by filing a wholly separate case." *Id*.

Because Peloton chose to engage in improper claim splitting, the Court should dismiss Peloton's complaint in the instant action. *See, e.g.*, *Leonard*, 2012 WL 3655512, at *4; *Adaptix*, 2015 WL 4999944, at *10; *Single Chip Sys.*, 495 F. Supp. 2d at 1065.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the instant action.

                                          Respectfully submitted,

                                          GREENBERG TRAURIG, LLP

OF COUNSEL:
                                          /s/ Benjamin J. Schladweiler
Douglas R. Weider                         Benjamin J. Schladweiler (#4601)
James L. Ryerson                          The Nemours Building
GREENBERG TRAURIG, LLP                    1007 North Orange Street, Suite 1200
500 Campus Drive, Suite 400               Wilmington, DE 19801
Florham Park, NJ 07932                    Phone: (302) 661-7000
Phone: (973) 360-7900                     schlwadweilerb@gtlaw.com
weiderd@gtlaw.com
ryersonj@gtlaw.com                        *Attorney for Defendant Echelon Fitness*
                                          *Multimedia, LLC*

Dated: March 1, 2021

12

**CERTIFICATE OF SERVICE**

I, Benjamin J. Schladweiler, hereby certify that on March 1, 2021, a true copy of the foregoing Defendant Echelon Fitness Multimedia, LLC's Opening Brief in Support of Motion to Dismiss for Improper Claim Splitting was served via electronic mail upon the following counsel of record:

Steven N. Feldman, Esquire
Latham & Watkins LLP
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071-1560
steve.feldman@lw.com

Lawrence J. Gotts
Latham & Watkins LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
lawrence.gotts@lw.com

Marc N. Zubick, Esquire
Latham & Watkins LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
marc.zubick@lw.com

David F. Kowalski, Esquire
Latham & Watkins LLP
12670 High Bluff Drive
San Diego, CA 92130
david.kowalski@lw.com

Michael J. Flynn, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
mflynn@mnat.com

*Counsel for Plaintiff Peloton Interactive, Inc.*